COMMONWEALTH *vs.* JOSEPHINE K. PELLEGRINI.

Plymouth. November 3, 1992. - February 26, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Practice, Criminal*, Indictment, Dismissal, Fair trial. *District Attorney. Judge. Constitutional Law*, Separation of powers. *Controlled Substances. Due Process of Law*, Fair trial. *Evidence*, Hospital record, Medical record. *Privacy.*

A Superior Court judge's dismissal of a grand jury indictment, over the Commonwealth's objection, violated art. 30 of the Massachusetts Declaration of Rights, where the indictment was valid on its face, the defendant's right to a fair trial was not shown to have been prejudiced, and the Commonwealth did not stipulate that there was insufficient evidence to be presented at a trial. [404-407]

A Superior Court judge incorrectly ruled that a criminal defendant had a privacy right in her newborn child's hospital records, which showed that the child's urine contained cocaine metabolites, and that the records could not be used to prosecute the mother for possession of narcotics. [407-409]

INDICTMENT found and returned in the Superior Court Department on September 26, 1989.

A pretrial motion to dismiss was heard by *Suzanne V. DelVecchio*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Geline W. Williams*, Assistant District Attorney, for the Commonwealth.

*Malcolm Joel Barach* for the defendant.

LYNCH, J. At issue in this case is whether the pretrial dismissal, over the Commonwealth's objection, of a grand jury indictment, violated art. 30 of the Massachusetts Declaration

of Rights.[1] The indictment charged the defendant with possession of cocaine, in violation of G. L. c. 94C, § 34 (1990 ed.).[2] The judge allowed the defendant's motion to dismiss, ruling that the use of the newborn's urinalysis to prosecute his mother for possession of narcotics, not child abuse, is beyond the scope and defeats the purpose of the statute used to obtain the evidence. G. L. c. 119, §§ 51A, 51B (1990 ed.).[3] We granted the Commonwealth's application for direct appellate review. We reject the defendant's claim that she has a privacy right in her child's hospital record. We agree with the Commonwealth that the pretrial dismissal of the indictment was improper.

The judge found the following facts in her memorandum of decision and order granting the motion to dismiss the in-

---

[1] Article 30 of the Massachusetts Declaration of Rights provides: "In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

[2] On September 26, 1989, the Plymouth County grand jury returned an indictment charging the defendant with the unlawful distribution of a Class B substance, cocaine, to a person under the age of eighteen in violation of G. L. c. 94C, § 32F (1990 ed.). The defendant filed a motion to dismiss which was allowed by the court on October 15, 1990. The Commonwealth does not appeal the dismissal of this indictment. The Commonwealth elected to pursue the possession of cocaine charge, which is a lesser included offense of the indictment. See *Commonwealth* v. *Perry*, 391 Mass. 808, 813-814 (1984) (indictment charging a violation of G. L. c. 94C, §§ 32-32G, the manufacturing, distribution, or dispensing of narcotics without a prescription, includes the offense of unauthorized possession of a controlled substance under G. L. c. 94C, § 34).

[3] General Laws c. 119, § 51A (1990 ed.), requires hospital personnel to notify the Department of Social Services (department) immediately if there is reasonable belief that a child has suffered physical, emotional, sexual abuse or neglect, or is physically dependent on a drug at birth, in contemplation of prosecution for child abuse.

General Laws c. 119, § 51B (1990 ed.), requires that medical reports of drug addicted newborns be turned over to the department in contemplation of prosecution for child abuse. The report apprises the department of the need to evaluate the family and to institute necessary support services in an effort to stabilize and to preserve the family.

dictment for possession of cocaine. On July 2, 1989, the defendant gave birth. The medical staff at Brockton Hospital tested a sample of the infant's urine, revealing the presence of cocaine metabolites which are the product of cocaine after it has been broken down by the liver in preparation for excretion from the body. The Commonwealth alleges that the presence of such metabolites indicates that the mother must have ingested cocaine and passed it in utero to the fetus shortly before birth.[4]

On August 15, 1989, the child was taken to the Brockton Hospital after a report that he had sustained injuries on his toes believed to be burn marks. Pediatric physicians at Brockton Hospital concluded that the burns had been inflicted by a cigarette or similar object. En route to the hospital, the defendant stated to the police that she had been using drugs during her pregnancy.

1. *Pretrial dismissal.* On appeal, the Commonwealth argues that the judge violated art. 30 in dismissing the indictment for possession. See note 2, *supra.* The defendant contends that the judge correctly dismissed the case thereby protecting the defendant's fundamental State and Federal constitutional rights.[5]

Article 30 creates a separation of powers among the branches of government essentially granting the prosecutor exclusive power to decide whether to prosecute a case. *Burlington* v. *District Attorney for the N. Dist.*, 381 Mass. 717, 721 (1980). Pretrial dismissal, over the Commonwealth's objection, of a valid complaint or indictment before a verdict, finding, or plea, and without an evidentiary hearing basically quashes or enters a nolle prosequi of the complaint or indictment. See *Commonwealth* v. *Gordon*, 410 Mass. 498, 503 (1991) (when a lawful complaint is dismissed prior to trial it

---

[4]There is no evidence that the child suffered any injury as a result of these traces of cocaine.

[5]The defendant's brief does not specify which articles of the Massachusetts Declaration of Rights or of the United States Constitution were violated by the indictment. Instead, the defendant refers to her privacy, due process, and equal protection rights with little case law support.

"prematurely cuts off the prosecution without a legal basis"). See also *Commonwealth* v. *Brandano*, 359 Mass. 332, 334-335 (1971); *Commonwealth* v. *Bressant*, 126 Mass. 246, 247 (1879). A decision to nolle pros a criminal case rests with the executive branch of government and, absent a legal basis, cannot be entered over the Commonwealth's objection. *Commonwealth* v. *Gordon, supra* at 500. See *Shepard* v. *Attorney Gen.*, 409 Mass. 398, 401 (1991) (prosecutors have broad discretion in determining whether to prosecute a case); *Manning* v. *Municipal Court of the Roxbury Dist.*, 372 Mass. 315, 318 (1977) (discretion lies with the prosecutor whether to prosecute a case and when to discontinue prosecution without appeal or approval of another official); *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 18 (1923) (power to enter a nolle prosequi rests with the prosecuting officer from indictment until the start of trial unless clear abuse of authority); *Commonwealth* v. *Hart*, 149 Mass. 7, 8 (1889) (only the prosecutor has authority to refuse to prosecute a case on behalf of the Commonwealth); *Commonwealth* v. *Tuck*, 20 Pick. 356, 366 (1838) (power to enter a nolle prosequi is with the prosecutor without the court's interference); *Commonwealth* v. *Wheeler*, 2 Mass. 172, 173 (1806) (power and responsibility of entering a nolle prosequi is for the prosecutor alone). In some instances a judge may properly dismiss an indictment over the objection of the prosecutor. See *Angiulo* v. *Commonwealth*, 401 Mass. 71, 79 (1987) (double jeopardy principles bar the Commonwealth's prosecution); *Commonwealth* v. *O'Dell*, 392 Mass. 445, 447 (1984) (improper presentation of evidence to the grand jury requires dismissal of indictment); *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982) (insufficient evidence presented to the grand jury to justify arrest of defendant); *Commonwealth* v. *Salman*, 387 Mass. 160, 166 (1982) (when it appears that grand jury integrity is impaired, defendant is entitled to evidentiary hearing to resolve the issue). This case does not fall within any of these exceptions, but rather is governed by the general rule that an indictment valid on its face should not be dismissed absent a showing

that the defendant's ability to obtain a fair trial is prejudiced. *Commonwealth* v. *Freiberg*, 405 Mass. 282, 300-301 (1989). Furthermore, pretrial dismissal cannot be sustained if, as here, the Commonwealth fails or refuses to stipulate that it has presented all the proof available for a contemplated trial. *Id.* See also *Rosenberg* v. *Commonwealth*, 372 Mass. 59, 63 (1977) (claim of insufficient evidence to be presented at trial cannot justify dismissal absent affidavit or stipulation of facts by Commonwealth).

The defendant also argues that she had no notice that her newborn's urine could be used as evidence in a prosecution against her, and, therefore, her due process rights were violated.[6] Under G. L. c. 94C, § 34, possession of a controlled substance may be constructive and shown by circumstantial evidence. See *Commonwealth* v. *Pratt*, 407 Mass. 647, 651 (1990); *Commonwealth* v. *Dinnall*, 366 Mass. 165, 168-169 (1974). The burden of proving all requisite elements of a possession charge is on the Commonwealth at trial, where it may be determined what criminal conduct is sufficiently delineated to put an average person on notice of what is prohibited.[7] Once on trial, the defendant may utilize all procedural

---

[6]The defendant contends that she may have had notice of G. L. c. 119, § 51A, in that suspected child abuse must be reported. However, she asserts that G. L. c. 94C, § 34, was not intended to be applied in this type of circumstance and to do so would constitute arbitrary and discriminatory enforcement by police and prosecutors.

[7]We do not decide the issue whether a newborn's urinalysis revealing cocaine metabolites is enough evidence to support a conviction of the mother for possession of a controlled substance. The majority rule in other jurisdictions seems to be that, absent other evidence, the mere presence of a controlled substance in a person's own body will not constitute possession within the meaning of criminal statutes. See *State* v. *Vorm*, 570 N.E.2d 109, 110 (Ind. Ct. App. 1991) (unless there is additional evidence, the presence of cocaine metabolites in a urine sample does not constitute prima facia evidence of knowing and voluntary possession of cocaine); *State* v. *Thronsen*, 809 P.2d 941, 943 (Alaska Ct. App. 1991) (defendant could not be convicted of cocaine in his body because he did not have control over the cocaine and therefore, could not be in possession); *Green* v. *State*, 260 Ga. 625, 626 (1990) (presence of cocaine metabolites in a person's urine is indicative of cocaine ingestion within prior forty-eight hours and only circumstantial evidence or indirect evidence that the person

and evidentiary safeguards available to ensure a fair trial and protection of her constitutional rights.

2. *Admissibility of hospital records.* The judge dismissed the indictment because of her view that the defendant possessed an overriding privacy interest in her child's medical records and further that use of the medical records would contravene the purpose of both the child abuse and drug possession statutes in violation of the defendant's due process rights. The confidentiality and right to privacy of medical records and treatment is addressed under G. L. c. 233, § 79 (1990 ed.).[8] This statute permits the court, in its discretion,

---

possessed cocaine); *State v. Lewis*, 394 N.W.2d 212, 217 (Minn. Ct. App. 1986) (mere presence of a controlled substance in a person's urine is insufficient circumstantial evidence to prove prior possession by defendant); *State v. Hornaday*, 105 Wash.2d 120, 125 (1986) (once a controlled substance is ingested into the body it is no longer under the person's dominion and control for possession purposes); *State v. Flinchpaugh*, 232 Kan. 831, 834 (1983) (while drug in person's blood can be used as circumstantial evidence to prove prior possession, it is insufficient to establish guilt because the drug could have been injected involuntarily or by trick). But see *Hall v. State*, 260 Ga. App. 585, 587 (1991) (conviction of possession of controlled substances based on level of drugs in defendant's blood upheld because there was additional evidence available to support possession charge including accident scene, police officer's observations, and defendant's demeanor).

Jurisdictions that have been faced with the possibility of convicting a woman of possession or distribution of a controlled substance, based on residual drug metabolites in her infant, have found the evidence to be insufficient to establish guilt. See *Jackson v. State*, 833 S.W.2d 220, 223 (Tex. Ct. App. 1992) (test for drugs in bodily fluids does not satisfy the elements for the offense of possession, nor can presence of residual drugs in an infant be ground for charging mother with possession); *Johnson v. State*, 602 So.2d 1288, 1290 (Fla. 1992) (cocaine metabolites found in infant's urine after birth insufficient evidence to convict mother of distribution of a controlled substance to another person, nor within legislative intent); *State v. Luster*, 204 Ga. App. 156, 157-159 (1992) (fetus is not considered a person under criminal statutes nor did Legislature intend to prosecute pregnant women who ingest a controlled substance, therefore, cannot find delivery from one person to another person when mother ingests a controlled substance while pregnant and infant tests positive for metabolites after birth).

[8]General Laws c. 233, § 79 (1990 ed.), provides in pertinent part that "Records kept by hospitals . . . under [G. L. c. 111, § 70] shall be admissible . . . as evidence . . . so far as such records relate to the treatment and

to allow in evidence hospital records to prove the truth of the facts in the record as they relate to the medical history and treatment. See *Doyle* v. *Dong*, 412 Mass. 682, 684 (1992); *Commonwealth* v. *Perry*, 385 Mass. 639 (1982). We have permitted the admission of statements and tests contained in hospital records which bear on criminal culpability if they relate only incidentally to the issue of liability. See *Commonwealth* v. *Gogan*, 389 Mass. 255, 263 (1983) (hospital record admissible which contained notations that defendant was violent and intoxicated on admission to the hospital in case charging assault and battery on police officer); *Commonwealth* v. *Franks*, 359 Mass. 577, 579-580 (1971) (test result revealing presence of sperm in victim admissible by prosecution in rape case); *Commonwealth* v. *Russo*, 30 Mass. App. Ct. 923 (1991) (blood alcohol level admissible as part of hospital record because presumption of reliability attaches to records relied upon when treating patients); *Commonwealth* v. *Riley*, 22 Mass. App. Ct. 698, 699-700 (1986) (hospital record containing blood test result admissible because it was ordered for medical reasons); *Commonwealth* v. *McNickles*, 22 Mass. App. Ct. 114, 123 (1986) (hospital records admitted which contained diagnosis of rape, and test results showing presence of semen). The judge has discretion in determining whether disclosure is appropriate, *Commonwealth* v. *Perry*, 385 Mass. 639, 642 (1982), and if admitted, the evidence may be "contradicted, qualified, believed or disbelieved." *Commonwealth* v. *Franks*, *supra* at 581.

Furthermore, the defendant's privacy and due process arguments assume that the defendant has the same privacy right in her child's medical record as she does in her own. This assumption is not correct. To permit parents to exclude medical or hospital records of their child on a privacy claim could be adverse to the child's best interests. See *Adoption of Diane*, 400 Mass. 196, 202 (1987) (privilege belongs to patient who has the burden of asserting the privilege; in care

medical history of such cases . . . but nothing therein contained shall be admissible as evidence which has reference to the question of liability."

and protection proceeding it would be anomalous to permit the parent to assert privilege); *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 399 Mass. 279, 286-287 (1987) (parent's hospital records are admissible under G. L. c. 233, § 79, in a parental termination proceeding). "[R]elevant evidence given by medical personnel concerning the treatment of a patient is admissible" and does not raise an issue of privacy. *Commonwealth v. Dube*, 413 Mass. 570, 571 (1992) (Commonwealth can introduce at trial hospital record revealing elevated alcohol level found on routine blood test performed at the direction of physician).

Furthermore, the Legislature has recognized that prenatal exposure to a controlled substance is probative of neglect by the mother. See G. L. c. 119, § 51A (presence of drug addiction in newborn constitutes abuse). Other jurisdictions also find evidence of neglect based on prenatal exposure to drugs. See Minn. Stat. § 626.556(2)(c) (1989) (neglect includes prenatal exposure to a controlled substance used by mother for nonmedical purpose and detected by toxicology on child or mother after delivery); Fla. Stat. ch. 415.503(9)(a)(2) (1991) (drug dependency of newborn ground for suspicion of child abuse and neglect); Ind. Code § 31-6-4-3.1 (1989) (neglect includes newborn whose blood or urine contains any amount of a controlled substance). Additionally, some States have imposed civil liability on mothers for drug impairment of their newborn children. See *In re Stefanel Tyesha C.*, 157 A.D.2d 322 (N.Y. 1990) (mother's admitted drug use and child's positive toxicology for cocaine at birth sufficient for cause of action for neglect); *In re Troy D.*, 215 Cal. App. 3d 889, 895, 900-901 (1989) (mother charged with neglect when newborn tested positive for cocaine had no right to prevent disclosure of child's medical records); *In re Ruiz*, 27 Ohio Misc. 2d 31, 35 (1986) (mother's use of heroin constituted abuse of viable fetus under child abuse statute); *Matter of Baby X*, 97 Mich. App. 111, 115-118 (1980) (best interests of child permit examination of all prenatal conduct that has impact on the child, including hospital records).

Accordingly, the order dismissing the indictment for possession of a class B substance, cocaine, is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*